## Case No. 16,355.

### UNITED STATES v. SOTO.

[1 Hoff. Land Cas. 8.] [1]

District Court, N. D. California. Dec. Term, 1855.

MEXICAN LAND GRANTS—CONFIRMATION—BREACH OF CONDITION.

[Where all the papers necessary to a perfect title are found complete in the archives, and the genuineness of the signatures is proved, the mere fact that a condition in the grant requiring a house to be built on the land within one year, was not strictly complied with, in regard to time, will not prevent confirmation, where the grant was not denounced by the former government, but was confirmed by the departmental assembly, notwithstanding the omission. Fremont v. U. S., 17 How. (58 U. S.) 542, followed.]

[Claim by Josefa Soto for the Rancho Capay, comprising ten leagues of land in Colusa county; confirmed by the board, and appealed by the United States.]

S. W. Inge, U. S. Atty.
William H. McKee, for appellee.

=====

## Case No. 16,356.

### UNITED STATES v. SOTO.

[Hoff. Land Cas. 77.] [1]

District Court, N. D. California. Dec. Term, 1856.

MEXICAN LAND GRANT—EVIDENCE OF ISSUE.

[May 8, 1842, on a petition by the claimant for certain land, the governor ordered a provisional grant to issue to her, "while she presents a plat of the lands petitioned for, subject to the usual reports." This land had then been occupied by her husband for two years, and by her for four years. In 1844 the prefect was ordered by the governor to report whether the land was vacant, and he reported that she was occupying it, and the governor, according to his own testimony, issued a grant for the land, and three persons, of whom two were interested as purchasers from the claimant of parts of the land, testified as to having seen the grant, and as to its loss. The expediente contained the order of concession on which a grant would issue as of course. The claimant continued to remain in possession of the land from the time of the alleged grant, and to claim the same, making considerable improvements thereon. Held, that a confirmation of the claim was justified.]

[Claim of Teodora Soto for the Rancho Cañada del Hambre, comprising three leagues of land in Contra Costa county; confirmed by the board, and appealed by the United States.]

William Blanding, U. S. Atty.
Crockett & Page, for appellee.

HOFFMAN, District Judge. The documentary evidence produced from the archives in

---

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

this case shows that in May, 1842, Teodora Soto petitioned the governor for a place called "La Cañada del Hambre." She represented that her deceased husband, Francisco Barcenas, had obtained a provisional grant of the land and had occupied it with his cattle. That shortly afterwards he was obliged to leave it in consequence of a fire which destroyed the pasture, and had since accidentally been killed. She therefore solicited the governor to grant her the land, though only provisionally, and until she could present a new sketch, and reminded him of the services of her late husband in the army for more than ten years, and that on his discharge more than half his pay was due him. The prefect Guillermo Castro, to whom the governor referred for information, reported that Barcenas had occupied the land provisionally until he should obtain the grant; that he built a corral, but that it was burnt, and Barcenas was obliged to withdraw from the premises, and soon after met his death. It appears, also, from the report of Estrada, that the expediente of the grant obtained by Barcenas could not be found in the archives; but José Castro certified that Barcenas, in 1839, had solicited the land, and it was granted to him provisionally. On the eighth of May, 1842, the governor ordered a provisional grant to be issued to Teodora Soto "while she presents a plat of the land petitioned for, subject to the usual reports." By the depositions taken in the case it appears that Barcenas moved to the Rancho of Cañada del Hambre in the year 1836; that he built a house and corral upon it, and cultivated a part of it in corn and vegetables. He remained there about two years, and after his removal and subsequent death his widow returned to it, built a large house, inclosed and cultivated a portion of the land, and has continued to live upon it ever since. She has, however, been driven from her house, and now resides in a small hut built of hides and tule and poles, which she has constructed for a shelter. The fact of her occupation of the land is also proved by Castro, who testifies that, in 1843 or 1844, he was ordered by the governor to report whether the land was vacant, and that he cited Teodora Soto to appear. She claimed to own the land, but did not produce her papers. She was, however, in the actual occupation of it, and Castro so reported to the governor. The grant alleged to have been issued by the governor in pursuance of the order above recited is not produced. Governor Alvarado testifies that a grant was issued in 1841 or 1842, in pursuance of the decree of concession contained in the expediente. Francisco Pereyra testifies that he saw in the possession of the claimant, in 1849, documents relative to the title of the Cañada del Hambre; that he read them several times; that he saw a document issued to Teodora Soto by Alvarado, and that he was present in March or April of 1850 when these documents were delivered by Teodora Soto

to General Vallejo, and that she said at the time that they were the title to the rancho. On cross examination the witness stated that the document stated the name of Teodora's husband; that the grant was made in consideration of his having been a soldier; that he did not remember whether it required any conditions, nor whether it was in the usual form; that Teodora Soto had sold a piece of the land to Vallejo in 1849, and that he received the title papers about eight months after the sale—at the time they were delivered to Vallejo he was called upon by Teodora to witness the fact. M. G. Vallejo testified that he had the title papers in his possession some years, but that about 1850, when he and his son-in-law Frisbie came to look for them, they could not be found. In 1850, however, when Major Cooper wished to secure a preemption in the vicinity of this land, he requested the witness to have the grant translated, and that he accordingly procured a translation to be made by Frederick Rejedor, then public translator, but since deceased. The witness then identified the translation as a correct translation of the original grant which he had seen and knew to be genuine. The original, he says, he delivered to Capt. Frisbie to be placed in his safe, and he has never since been able to find it. Capt. Frisbie testifies that he had the original grant in his possession in 1849 or 1850; that he sent it to Sonoma, and it was returned to him, as he thinks, with the translation on file in the case. The paper when returned to him, if returned at all, was tied up in a handkerchief and thrown into an iron safe either by him or some of his clerks; that some time after the claimant applied to him for her papers, to be used in a law suit—on opening the handkerchief he found the translation, but not the original document; that he searched for it diligently, and wrote to General Vallejo at Sonoma for it, but could not find it. General Vallejo, he says, insisted that he had sent it back in the handkerchief, but the witness could never ascertain what had become of it. The witness further states that he read the translation soon after having the original in his possession; that he then thought and now thinks the translation was correct. He identifies the handwriting of the translation as that of Rejedor, a teacher in Sonoma and a public translator in that district.

The grant, as appears by the translation, is of three sitios "of that which shall remain over from the ranchos of the Pinole and Mr. Welsh, after they shall have been duly measured." By evidence taken in this court on appeal it appears that both Vallejo and Frisbie were, at the time of giving their testimony, interested in maintaining the grant—having purchased a portion of the land from the claimant. The objection was not, however taken at the time their testimony was given, nor has any motion been made to suppress their depositions. It however affects

their credibility, and if the proof of the existence of the original grant rested on their testimony alone, it might well be regarded as unsatisfactory. But Alvarado, the governor, and Francisco Pereyra both swear, the one that he issued the grant, the other that he saw it in the possession of the claimant. The expediente contains the order of concession upon which a grant would issue as of course; and Castro testifies that in 1842 or 1843 the claimant was in actual occupation of the land, claiming it as her own. The date of the grant in the translation is 1841; while the order of concession is 1842. This discrepancy was noticed by the board; but though calculated to excite suspicion, it was considered that it might with greater probability be attributed to a mistake of the translator than received as evidence that no such grant was ever issued. The United States have also produced in evidence a communication of José R. Estrada to the justice of the peace of Contra Costa. In this communication Estrada states that he was directed by the governor to inform the judge that there had been dispatched to Don Ignacio Martinez the title of the tract called the "Pinole"; and that Doña Teodora Soto should be informed that the pretension she has to occupy the tract called the Cañada del Hambre has no foundation, for that it belongs to the mentioned tract of El Pinole. This communication is dated June 2d, 1842. The order of concession in the expediente bears date May 8th, of the same year. Alvarado, though he recognizes the handwriting of Estrada, is unable to remember that he directed the communication to be made; and all that can be inferred from the document, assuming that it was written in pursuance of the orders of the governor, is, that the claim of Teodora Soto to any part of the Pinole rancho was disallowed by the government. But this would rather seem to confirm and strengthen the evidence in favor of the grant; for in that instrument the land granted is expressly limited to "three sitios of that which shall be left over from the ranchos of the Pinole and Mr. Welsh." If, then, after the issuing of this grant the Pinole rancho had been found to embrace any portion of the land claimed by Teodora Soto to have been granted to her, the communication of Estrada would naturally have been made, and would have been entirely consistent with the rights really acquired by Teodora Soto.

Obliged as we are in these cases to found our judgment upon testimony not in all respects reliable, it is impossible to affirm with certainty that the grant issued. I think, however, that the proofs preponderate in favor of that supposition. There seems no good reason to suppose that the governor withheld the grant which he himself ordered to be issued. The destitute condition of the applicant, and the services and misfortunes of her husband, must have commended her application to his favor; and we find her occupying and claiming the land from about the date of the alleged grant to the present time. The nature and extent of the improvements made by her would seem to indicate that she then considered herself as owning the land, and even the fact that in 1849 Vallejo purchased a portion of it from her might, perhaps, be considered a corroborating circumstance, for it implies a recognition on his part of her rights at an early day, and before the rise in value of the land presented temptations to manufacture spurious titles. The board, notwithstanding some suspicions which attend the case, confirmed the claim, and we have not discovered sufficient reasons for reversing their decision. The claim, however, must be strictly limited to the land granted; and it can only embrace such portion of the Cañada del Hambre, not exceeding three leagues, as is not included within the limits of the ranchos of El Pinole and Mr. Welsh, when the same shall have been duly ascertained.